**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| U.S. BANK, N.A., a Delaware corporation ) and national banking association, ) )    Plaintiff, ) )    v. ) ) C.A.R. LEASING, INCORPORATED, ) an Illinois corporation, ) SONNY FOX, an Illinois citizen, and ) MARC ZARANSKY, an Illinois citizen ) )    Defendants. ) | Case No. 08 CV 1822 Judge Kennelly Magistrate Judge Mason |

**PLAINTIFF U.S. BANK'S MOTION TO ENTER DEFAULT AND SET A HEARING TO
AWARD DAMAGES AND ENTER JUDGMENT BY DEFAULT**

Pursuant to Fed. R. Civ. P. 55 and other governing law, Plaintiff, U.S. BANK, N.A. ("Plaintiff" or "U.S. Bank"), by its attorneys, Freeborn & Peters LLP, hereby moves for an order entering default and setting a hearing to award damages and enter judgment by default on its claims against C.A.R. LEASING, INC. ("CLI"), SONNY FOX ("Fox"), and MARC ZARANSKY ("Zaransky") (collectively "Defendants"). In support of its motion, U.S. Bank states as follows:

1. On March 31, 2008, U.S. Bank filed its original Complaint against Defendants CLI and Fox. The Summons and Complaint were served on CLI and Fox on April 3, 2008. (*See* Docket Nos. 9 and 10, respectively.)

2. On April 18, 2008, U.S. Bank filed its Amended Complaint ("Amended Complaint") against Defendants CLI, Fox and Zaransky. (A copy of the Amended Complaint is attached hereto as Exhibit "A".)

3.      The Summons and Amended Complaint were served on Zaransky on April 22, 2008.  (*See* Affidavit of Process Server, attached as Exhibit "B".)  Pursuant to Fed. R. Civ. P. 12(a)(1)(A), Zaransky was required to answer the Amended Complaint by May 12, 2008.

4.      The Summons and Amended Complaint were served on CLI and Fox on April 29, 2008.  (*See* Affidavit of Process Server, attached as Exhibit "C".)  Pursuant to Fed. R. Civ. P. 12(a)(1)(A) and 15(a), CLI and Fox were required to answer the Amended Complaint by May 13, 2008.

5.      The Amended Complaint asserts the following claims: Count I: Rescission (against CLI); Count II: Breach of Contract (against CLI, in the alternative to Count I); Count III: Enforcement of Guaranty (against Fox); Count IV: Fraudulent Inducement (against all Defendants); Count V: Fraudulent Concealment (against all Defendants); and Count VII: Piercing the Corporate Veil (against Fox and Zaransky).

6.      The Amended Complaint details a scheme to defraud perpetrated by Defendants, who purchased vehicles from third-party dealerships, secured financing for those purchases from U.S. Bank, and then kept the funds provided by U.S. Bank instead of paying the third-party dealerships for the vehicles.  This action also arises from CLI's defaults and material breaches of certain express warranties and promises contained in a Dealer Agreement ("Agreement") entered into by and between U.S. Bank and CLI.  As a result of Defendants' fraudulent and illegal behavior, U.S. Bank has been damaged in excess of $600,000.00.

7.      Furthermore, U.S. Bank is apparently not the only entity that has been a victim of Defendants' fraudulent behavior.  As a local newspaper has reported, there are currently pending at least five lawsuits by banks and car dealers against Defendants for similar fraudulent schemes.

(*See* John Kass, *At Felon's Car-Leasing Spot, Pols Have Zeal For The Deals*, Chicago Tribune, May 4, 2008, attached hereto as Exhibit "D.")

8.      Each of the Defendants has failed to file an Appearance in this matter, and each of the Defendants has failed to timely answer or otherwise plead in response to U.S. Bank's Amended Complaint.

9.      Consequently, U.S. Bank requests that a default be entered by the Court against Defendants pursuant to Rule 55(a), and that the Court set a hearing to determine the amount of damages and enter a judgment by default pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.

WHEREFORE, pursuant to Rule 55 of the Federal Rules of Civil Procedure, Plaintiff U.S. Bank, N.A. requests that this Court enter a default against Defendants, C.A.R. Leasing, Inc., Sonny Fox, and Marc Zaransky; set a hearing at which Plaintiff will offer evidence of its damages and seek entry of judgment by default, and grant such further relief as the Court deems just and proper.

Respectfully submitted,

**U.S. BANK, N.A.,**
**Plaintiff**


BY:    /s/Daniel J. Voelker
One of Its Attorneys


Daniel J. Voelker, Esq.
Atty. No. 6189578
Hillard M. Sterling, Esq.
Atty. No. 6232655
FREEBORN & PETERS
311 South Wacker Drive, Suite 3000
Chicago, Illinois  60606
(312) 360-6000

Dated: May 23, 2008

#1539471v3

# EXHIBIT "A"

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| U.S. BANK, N.A., a Delaware corporation and national banking association, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.   08 CV 1822 |
| C.A.R. LEASING, INCORPORATED, an Illinois corporation, | ) ) ) | Judge Kennelly |
| SONNY FOX, an Illinois citizen, and MARC ZARANSKY, an Illinois citizen | ) ) ) | Magistrate Judge Mason |
| Defendants. | ) ) ) ) | **JURY DEMANDED** |

## AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a), Plaintiff, U.S. BANK, N.A. ("Plaintiff" or "U.S. Bank"), a Delaware corporation, by and through its attorneys, and for its Amended Complaint against Defendants, C.A.R. LEASING, INCORPORATED ("Defendant" or "CLI"), an Illinois corporation, SONNY FOX ("Fox"), an Illinois citizen, and MARC ZARANSKY ("Zaransky"), an Illinois citizen, (collectively "Defendants"), states as follows:

### NATURE OF THE ACTION

1.     This action arises from a scheme to defraud perpetrated by Defendants, who purchased vehicles from third-party dealerships, secured financing for those purchases from U.S. Bank, and then kept the funds provided by U.S. Bank instead of paying for the vehicles. Defendants developed and perpetrated that scheme in order to profit unlawfully by purchasing vehicles without paying for them and keeping and/or misusing the funds received from U.S. Bank.  U.S. Bank has been harmed by the scheme because, among other things, Defendants'

scheme and misconduct have precluded and/or impaired U.S. Bank from protecting its ownership rights, titles and interests in the vehicles.

2.     This action also arises from CLI's defaults and material breaches of contractual terms contained in a Dealer Agreement ("Agreement") entered into by and between U.S. Bank and CLI.  Under the Agreement, U.S. Bank agreed to purchase vehicle sales or lease contracts from CLI, and CLI made certain express warranties and promises regarding those contracts.  CLI breached those warranties and promises by refusing and/or failing to file applications for titles and registrations for the vehicles and submitting such applications (which would reflect U.S. Bank's rights, title and interest in the vehicles) to the appropriate governmental agency. Accordingly, U.S. Bank seeks to: (a) rescind the Agreement and recover all amounts paid to CLI or, alternatively, (b) enforce the Agreement and recover damages caused by CLI including, without limitation, all unpaid balances owed by CLI's customers under the contracts purchased by U.S. Bank.  Moreover, U.S. Bank seeks to recover all such amounts or damages from Fox in accordance with a Guaranty under which Fox unconditionally and absolutely guaranteed full and prompt payment of any indebtedness of CLI to U.S. Bank.  U.S. Bank also seeks to recover all attorneys' fees and costs incurred in connection with bringing this action and enforcing its contractual rights as provided and permitted by the Agreement and Guaranty.

## THE PARTIES

3.     Plaintiff, U.S. Bank, N.A., is a corporation in good standing and duly organized and existing under the laws of the State of Delaware with its principal place of business in Minneapolis, Minnesota.  U.S. Bank's certificate of organization also identifies the State of Ohio as the place where its operations are conducted.  U.S. Bank is the successor-in-interest to Firstar

Bank, N.A., and Star Bank, N.A. (collectively, U.S. Bank and its predecessors-in-interest shall be referred to as "U.S. Bank").

4.    Defendant C.A.R. Leasing, Incorporated ("CLI") is a corporation in good standing and duly organized and existing under the laws of the State of Illinois with its principal place of business in Lincolnwood, Illinois.  CLI is in the business of selling and leasing motor vehicles to consumers.

5.    Defendant Sonny Fox ("Fox") is an individual and citizen of the State of Illinois. Fox is CLI's President.

6.    Defendant Marc Zaransky ("Zaransky") is an individual and citizen of the State of Illinois.  Zaransky is an employee of CLI.

## JURISDICTION AND VENUE

7.    This Court has personal jurisdiction over Defendants, which reside in this State, have entered into contracts with citizens of this State, and have purposely availed themselves of the benefits and the laws and commerce of this State.

8.    This Court has subject-matter jurisdiction to decide this case under 28 U.S.C. § 1332.  There is complete diversity between Plaintiff and Defendants, and the amount in dispute exceeds the value of $75,000.00, exclusive of fees and costs.

9.    Venue is proper in this District under 28 U.S.C. § 1391(a) because one or more of the Defendants reside in this District, and because a significant portion of the events or omissions that give rise to this cause of action occurred within this District.

## GENERAL ALLEGATIONS

### CLI and Fox Assumed Clear Duties To U.S. Bank Under Dealer Agreement and Guaranty.

10.    On or around October 19, 2004, U.S. Bank and CLI entered into the Dealer Agreement ("Agreement"), a true and correct copy of which is incorporated herein and attached hereto as Exhibit A.

11.    The Agreement provided that U.S. Bank was to buy from CLI (defined under the Agreement as "Dealer") certain vehicle sales contracts and leasing contracts (each of which is defined under the Agreement as the "Contract") that CLI had entered into with buyers or lessors of motor vehicles sold or leased by CLI.

12.    Pursuant to the Agreement, CLI made certain express "specific warranties" to U.S. Bank as to each Contract purchased by U.S. Bank from CLI under the Agreement. (Agreement, Exh. A, at § 7.) CLI's warranties provided, among other things, that:

      a.    Dealer has caused title to the Contract and the Vehicle, free in either instance of any lien or encumbrance or claim or defense by the Customer, to be conveyed to U.S. Bank or its designee;

*      *      *

      q.    As directed by U.S. Bank, Dealer will file an application for title and registration for the Vehicle and submit it to the appropriate governmental agency showing U.S. Bank's interest in the Vehicle on or before twenty (20) days after the Customer receives possession of the Vehicle;

      r.    Dealer will file and record all documents necessary to perfect a valid and enforceable first priority security interest of U.S. Bank with respect to Vehicles subject to Retail Contracts and will send U.S. Bank the filing receipts.

(*Id.*)

13.    The Agreement also provided that, "[i]f a Dealer representation, warranty or covenant made in the assignment of a Contract to U.S. Bank is breached or is untrue or is alleged

4

to be breached or untrue or should Dealer fail to perform any of its obligations to U.S. Bank under this Agreement, Dealer shall promptly pay" certain amounts to U.S. Bank, including without limitation "the unpaid balance of any Customer's liability in the event of early termination on any or all Contracts purchased hereunder, as determined by U.S. Bank less any applicable deposit, prepaid rental or similar sum or any Dealer Reserve not paid to Dealer in connection with said Contracts which U.S. Bank shall retain."

14.    On or around October 26, 2004, U.S. Bank and Fox entered into the Guaranty, a true and correct copy of which is incorporated herein and attached hereto as Exhibit B.

15.    Under the Guaranty, Fox (defined under the Guaranty as the "Guarantor") undertook certain "Guaranty Obligations" including, without limitation, the obligation that Fox "hereby unconditionally and absolutely guarantees (i) the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of all Indebtedness, and (ii) the full and prompt performance of all the terms, covenants, conditions and agreements related to the Indebtedness." (Guaranty, Exh. B, at § 2.) The Guaranty defined "Indebtedness" to "mean any obligation or indebtedness of any kind of any Dealer to U.S. Bank, howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, renewed or extended, or now or hereafter existing or due to become due, including without limitation, those obligations arising from the Dealer Agreement between the Dealer and U.S. Bank." (*Id.* at § 1(b).) The Guaranty defined "Dealer" as CLI. (*Id.* at § 1(a).)

16.    CLI assigned Contracts to U.S. Bank under the Agreement. In exchange for those assignments, U.S. Bank tendered full payment to CLI of amounts owed by U.S. Bank to CLI for those Contracts under the Agreement.

**Defendants Implemented A Scheme To Sell Vehicles From Third-Party Dealerships But Refuse To Pay Those Dealerships With Payments By U.S. Bank Under The Agreement.**

17.    Defendants developed and implemented a scheme under which they would profit wrongfully and unlawfully by securing payments by U.S. Bank under the Agreement for vehicle sales contracts or leases but failing and/or refusing to tender those payments to the third-party dealerships from which Defendants bought or secured the vehicles.

18.    Specifically, Defendants regularly contacted third-party dealerships in an attempt to arrange for the delivery of certain motor vehicles to Defendants or Defendants' customers (herein collectively referred to as the "Vehicles").

19.    When Defendants made the aforementioned arrangements with third-party dealerships, Defendants represented to the respective dealerships that Defendants would tender payment for the Vehicles to the third-party dealerships once the sales contracts or leases were executed by Defendants' customers and the Contracts were assigned to U.S. Bank under the Agreement. The third-party dealerships then were to provide the Vehicles to Defendants who, in turn, would sell or lease the Vehicles to Defendants' customers.

20.    When the third-party dealerships provided the Vehicles to Defendants, the third-party dealerships retained and refused to transfer title to the Vehicles unless and until Defendants tendered payment to said third-party dealerships for the Vehicles provided.

21.    As part of their scheme, at the time Defendants sold or leased the Vehicles to their customers, Defendants assigned the Contracts to various financial institutions, including U.S. Bank. In exchange for this assignment, U.S. Bank, among others, tendered full payment to CLI in the amount identified in the Contracts.

6

22.    Despite Defendants' representations to all parties involved, once the Vehicles were sold or leased and the Contracts were assigned to U.S. Bank, Defendants refused to pay the third-party dealerships the full amounts owed by Defendants for the Vehicles.

23.    Due to Defendants' failures to pay the third-party dealerships these amounts, the third-party dealerships refused to transfer any of the titles for the Vehicles to U.S. Bank, despite U.S. Bank's clear ownership interest in, or lease on, the Vehicles, and despite the third-party dealerships' lack of ownership rights, titles and interests in connection with the Vehicles.

24.    The actions of CLI are in clear violation of the written warranties and provisions of the Agreement, under which CLI expressly warranted and agreed that it would be able to provide U.S. Bank with clear titles for the Vehicles.

25.    In breach and default of the Agreement, on or before twenty (20) days after CLI's customers received possession of their vehicles, CLI refused and/or failed to file applications for title and registration for the vehicles to the appropriate governmental agency (the Illinois Secretary of State) showing U.S. Bank's interest in the vehicles. (*See* Agreement, Exh. A, at § 7(q).)

26.    In further breach and default of the Agreement, CLI has failed and/or refused to: (a) file and record all documents necessary to perfect a valid and enforceable first priority security interest of U.S. Bank with respect to vehicles subject to Contracts; and/or (b) send U.S. Bank the filing receipts. (*See* Agreement, Exh. A, at § 7(r).)

27.    As a result of CLI's breaches and misconduct, U.S. Bank is now completely unable to affix or otherwise secure its ownership interests or valid and enforceable first-priority security interests in the vehicles in question. CLI's improper actions have resulted in U.S. Bank having an unsecured interest in the vehicles. Had U.S. Bank known that it was only going to

receive an unsecured interest in the vehicles, U.S. Bank would not have entered into the Agreement with CLI.

**COUNT I**
**(RESCISSION – AGAINST CLI)**

28.    U.S. Bank incorporates and realleges the allegations contained in Paragraphs 1 through 27 as if fully stated herein.

29.    The Agreement is a valid and enforceable contract between U.S. Bank and CLI freely entered into by U.S. Bank and CLI.

30.    CLI materially breached and/or defaulted under the Agreement by failing or refusing to: (a) file applications for title and registration for the vehicles to the appropriate governmental agency (the Illinois Secretary of State) showing U.S. Bank's interest in the vehicles (*see* Agreement, Exh. A, at § 7(q)); (b) file and record all documents necessary to perfect a valid and enforceable first priority security interest of U.S. Bank with respect to vehicles subject to Contracts (*see id.* at § 7(r)); and/or (c) send U.S. Bank the filing receipts (*see id.* at § 7(r)).

31.    U.S. Bank fully performed all of its obligations under the Agreement.

32.    Due to CLI's material breaches of, and defaults under, the Agreement, U.S. Bank has not received the benefits of the bargains it made with CLI.

33.    Additionally, the Agreement provided that U.S. Bank is entitled to recover costs, fees and out-of-pocket expenses, including attorneys' fees, related to CLI's breach of the Agreement.

WHEREFORE, Plaintiff, U.S. BANK, N.A., respectfully requests that this Court enter judgment in its favor and against Defendant, C.A.R. LEASING, INCORPORATED, rescinding the Agreement and restoring the Parties to the *status quo ante* by requiring CLI to return all

monies advanced to it under the Agreement, as well as awarding U.S. Bank its interest, costs, attorneys' fees and all other relief that this Court finds just and appropriate.

## COUNT II (ALTERNATIVE TO COUNT I)
## (BREACH OF CONTRACT – AGAINST CLI)

34.     U.S. Bank incorporates and realleges the allegations contained in Paragraphs 1 through 27 as if fully stated herein.

35.     The Agreement between U.S. Bank and CLI is a valid and enforceable contract freely entered into by U.S. Bank and CLI.

36.     CLI materially breached, and/or defaulted under, the Agreement.  Specifically, CLI materially breached the Agreement by failing or refusing to: (a) file applications for title and registration for the vehicles to the appropriate governmental agency (the Illinois Secretary of State) showing U.S. Bank's interest in the vehicles (*see* Agreement, Exh. A, at § 7(q)); (b) file and record all documents necessary to perfect a valid and enforceable first priority security interest of U.S. Bank with respect to vehicles subject to Contracts (*see id.* at § 7(r)); and/or (c) send U.S. Bank the filing receipts (*see id.* at § 7(r)).

37.     U.S. Bank fully performed all of its obligations under the Agreement.

38.     U.S. Bank has been damaged by CLI's material breaches of the Agreement in an amount to be proven at trial, but at least equal to the total monies advanced to CLI by U.S. Bank pursuant to the Agreement.

39.     Additionally, the Agreement provides that U.S. Bank is entitled to recover costs, fees and out-of-pocket expenses, including attorneys' fees, related to CLI's breach of the Agreement.

WHEREFORE, Plaintiff, U.S. BANK, N.A., respectfully requests that this Court enter judgment in its favor and against Defendant, C.A.R. LEASING, INCORPORATED, for any and

all damages caused by the above-alleged breaches of the Agreement, in an amount to be proven at trial, but in excess of $600,000.00, as well as awarding U.S. Bank its costs, attorneys' fees and all other relief the Court finds just and appropriate.

## COUNT III
## (ENFORCEMENT OF GUARANTY – AGAINST FOX)

40.    U.S. Bank incorporates and realleges the allegations contained in Paragraphs 1 through 39 as if fully stated herein.

41.    The Guaranty is a valid and enforceable contract between U.S. Bank and Fox freely entered into by U.S. Bank and Fox.

42.    Under the Guaranty, Fox unconditionally and absolutely guaranteed: (i) the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of all Indebtedness, and (ii) the full and prompt performance of all the terms, covenants, conditions and agreements related to the Indebtedness. (Guaranty, Exh. B, at § 2.)

43.    The amounts owed by CLI to U.S. Bank under the Agreement constitute an "Indebtedness" guaranteed by Fox and owed to U.S. Bank under the Guaranty.

44.    The damages caused by CLI to U.S. Bank in connection with Counts I or II above constitute an "Indebtedness" guaranteed by Fox and owed to U.S. Bank under the Guaranty.

45.    U.S. Bank has complied with and performed all of its duties and obligations under the terms of the Agreement and Guaranty.

46.    As of the filing of this Complaint, Fox has not made full payment of the amounts owed to U.S. Bank under the Guaranty.

WHEREFORE, Plaintiff, U.S. BANK, N.A. respectfully requests that this Court enter judgment in its favor and against Defendant, SONNY FOX, of all sums owed under the

Guaranty, in an amount to be proven at trial, but in excess of $600,000.00, as well as awarding U.S. Bank its costs, attorneys' fees and all other relief the Court finds just and appropriate.

## COUNT IV
## (FRAUDULENT INDUCEMENT – AGAINST ALL DEFENDANTS)

47.     U.S. Bank incorporates and realleges the allegations contained in Paragraphs 1 through 27 as if fully stated herein.

48.     Defendants have engaged in a scheme, or schemes, to defraud U.S. Bank by inducing U.S. Bank to enter into the Agreement so that Defendants would be able to improperly and illegally receive funds from U.S. Bank and keep those funds rather than pay third-party dealerships from which Defendants bought or secured the Vehicles.

49.     Before CLI entered into the Agreement, Defendants made false statements to U.S. Bank that Defendants intended to – and would – use funds paid by U.S. Bank in order to pay third-party dealerships from which Defendants bought or secured the Vehicles.  Those false statements were part of a scheme, or schemes, to defraud U.S. Bank and keep the funds paid by U.S. Bank rather than pay the third-party dealerships for the Vehicles.

50.     Before CLI entered into the Agreement, Defendants also made false statements to U.S. Bank that U.S. Bank would have ownership interests in the vehicles, or would be able to perfect valid and enforceable first-priority security interests in the Vehicles, upon Defendants' conveyance of good and proper title to the Vehicles.  Those false statements were part of a scheme, or schemes, to defraud U.S. Bank and keep the funds paid by U.S. Bank rather than pay the third-party dealerships for the Vehicles.

51.     The above-alleged statements were false because Defendants knew that: (a) they would not use funds paid by U.S. Bank in order to pay third-party dealerships from which Defendants bought or secured the Vehicles; and/or (b) U.S. Bank would not receive the titles for

the Vehicles and/or be able to perfect valid and enforceable first-priority security interests in the Vehicles.

52.    The above-alleged false statements were made by Defendants for purposes of inducing U.S. Bank to act by: (a) entering into the Agreement; (b) paying funds under the Agreement; and/or (c) doing (and continuing to do) business with Defendants despite their fraudulent and unlawful scheme or schemes.

53.    At the time they made the above-alleged false statements, Defendants knew that those statements were false and/or recklessly disregarded the truth or falsity of those statements.

54.    The above-alleged false statements were material because, in the absence of such statements, U.S. Bank would not have: (a) entered into the Agreement; (b) paid funds under the Agreement; and/or (c) done (or continued to do) business with Defendants.

55.    U.S. Bank reasonably believed the above-alleged false statements and reasonably relied on such statements by: (a) entering into the Agreement; (b) paying funds under the Agreement; and/or (c) doing (and continuing to do) business with Defendants despite their fraudulent and unlawful scheme or schemes.

56.    U.S. Bank's reliance on the above-alleged false statements proximately caused damages suffered by U.S. Bank, including without limitation, damages consisting of: (a) amounts paid under the Agreement; and/or (b) amounts lost because of U.S. Bank's inability to assert ownership interests in the Vehicles and/or perfect valid and enforceable first-priority security interests in the Vehicles.

WHEREFORE, Plaintiff, U.S. BANK, N.A. respectfully requests that this Court enter judgment in its favor and against Defendants, C.A.R. LEASING, INCORPORATED, SONNY FOX, and MARC ZARANSKY, of all damages caused by their fraudulent scheme or schemes

and inducements, in an amount to be proven at trial, but in excess of $600,000.00, as well as awarding U.S. Bank its costs, attorneys' fees and all other relief the Court finds just and appropriate.

## COUNT V
### (FRAUDULENT CONCEALMENT – AGAINST ALL DEFENDANTS)

57.     U.S. Bank incorporates and realleges the allegations contained in Paragraphs 1 through 27, and 47 through 56, as if fully stated herein.

58.     Defendants have engaged in a scheme, or schemes, to defraud U.S. Bank by concealing material facts from U.S. Bank in order to improperly and illegally receive funds from U.S. Bank and keep those funds rather than pay third-party dealerships from which Defendants bought or secured Vehicles.

59.     After CLI entered into the Agreement, Defendants falsely concealed from U.S. Bank that Defendants did not intend to – and would not – use funds paid by U.S. Bank in order to pay third-party dealerships from which Defendants bought or secured the Vehicles.  Those concealments were part of a scheme, or schemes, to defraud U.S. Bank and keep the funds paid by U.S. Bank rather than pay the third-party dealerships for the Vehicles.

60.     After CLI entered into the Agreement, Defendants also falsely concealed from U.S. Bank that U.S. Bank would not have ownership interests in the Vehicles, or would not be able to perfect valid and enforceable first-priority security interests in the Vehicles, because Defendants did not intend to – and would not – convey (or be able to convey) good and proper title to the Vehicles.  Those false concealments were part of a scheme, or schemes, to defraud U.S. Bank and keep the funds paid by U.S. Bank rather than pay the third-party dealerships for the Vehicles.

61.    The above-alleged concealments were fraudulent because Defendants knew that:
(a) they would not use funds paid by U.S. Bank in order to pay third-party dealerships from
which Defendants bought or secured the Vehicles; and/or (b) U.S. Bank would not receive the
titles for the Vehicles and/or be able to perfect valid and enforceable first-priority security
interests in the Vehicles.

62.    The above-alleged false concealments were undertaken by Defendants for
purposes of inducing U.S. Bank to act by: (a) paying funds under the Agreement; and/or (b)
doing (and continuing to do) business with Defendants despite their fraudulent and unlawful
scheme or schemes.

63.    At the time they undertook the above-alleged fraudulent concealments,
Defendants had a duty to disclose the concealed facts but failed to do so, in that the
circumstances created an opportunity and a duty to speak and disclose that: (a) Defendants would
not (and did not) use funds paid by U.S. Bank in order to pay third-party dealerships from which
Defendants bought or secured the Vehicles; and/or (b) U.S. Bank would not (and did not) receive
the titles for the Vehicles and/or would not be able (and was unable) to perfect valid and
enforceable first-priority security interests in the Vehicles.

64.    The above-alleged concealments were material because, in the absence of such
concealments, U.S. Bank would not have: (a) entered into the Agreement; (b) paid funds under
the Agreement; and/or (c) done (or continued to do) business with Defendants.

65.    U.S. Bank reasonably relied on the failure of Defendants to disclose the above-
alleged concealed facts by: (a) entering into the Agreement; (b) paying funds under the
Agreement; and/or (c) doing (and continuing to do) business with Defendants despite their
fraudulent and unlawful scheme or schemes.

14

66.    U.S. Bank's reliance on the above-alleged concealments proximately caused damages suffered by U.S. Bank, including without limitation, damages consisting of: (a) amounts paid under the Agreement; and/or (b) amounts lost because of U.S. Bank's inability to assert ownership interests in the Vehicles and/or perfect valid and enforceable first-priority security interests in the Vehicles.

WHEREFORE, Plaintiff, U.S. BANK, N.A. respectfully requests that this Court enter judgment in its favor and against Defendants, C.A.R. LEASING, INCORPORATED, SONNY FOX, and MARC ZARANSKY, of all damages caused by their fraudulent concealments, in an amount to be proven at trial, but in excess of $600,000.00, as well as awarding U.S. Bank its costs, attorneys' fees and all other relief the Court finds just and appropriate.

## COUNT VII
## (PIERCING THE CORPORATE VEIL – AGAINST FOX AND ZARANSKY)

67.    U.S. Bank incorporates and realleges the allegations contained in Paragraphs 1 through 27, and 47 through 66, as if fully stated herein.

68.    Upon information and belief in the conduct of their business of CLI, Fox and Zaransky (the "Individual Defendants") failed to follow corporate formalities and protocol by, among other things: failing to adequately capitalize CLI; failing to conduct corporate meetings and maintain corporate records; failing to segregate personal and corporate financial matters; commingling corporate assets and personal assets; and/or using corporate funds for personal reasons.

69.    Furthermore, Individual Defendants used for their own personal gain and purposes monies paid to CLI for business and corporate activities.

70.    CLI was so controlled and manipulated by Individual Defendants that it had become a mere instrumentality of Individual Defendants.

71.    Recognizing a separate corporate identity of CLI would sanction a fraud and/or promote an injustice.

WHEREFORE, Plaintiff, U.S. BANK, N.A. respectfully requests that this Court enter judgment in its favor and against Individual Defendants, SONNY FOX, and MARC ZARANSKY, piercing the corporate veil of Defendant CLI, and holding Individual Defendants liable for all debts and obligations owed by CLI to U.S. BANK, N.A., as set forth herein, in an amount to be proven at trial, but in excess of $600,000.00, as well as awarding U.S. Bank its costs, attorneys' fees and all other relief the Court finds just and appropriate.

### JURY DEMAND

U.S. Bank hereby demands trial by jury on all claims that may be remedied by damages in an action at law.

Respectfully submitted,

**U.S. BANK, N.A.,**
**Plaintiff**


By:   _/s/ Hillard M. Sterling_
One of Its Attorneys

Daniel J. Voelker, Esq.
    Atty. No. 6189578
Hillard M. Sterling, Esq.
    Atty. No. 6232655
FREEBORN & PETERS
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6000

Dated: April 16, 2008

#1524506v1

## CERTIFICATE OF SERVICE

The undersigned attorney states that he caused a true and correct copy of **Plaintiff's Amended Complaint** to be served upon the parties of record, as shown below, via U.S. Mail and Federal Express Overnight Delivery on the **18th** day of **April, 2008.**

C.A.R. Leasing Incorporated
c/o Sonny Fox, Registered Agent
7100 N. Ridgeway
Lincolnwood, IL   60645

Sonny Fox, Registered Agent
7100 N. Ridgeway
Lincolnwood, IL   60645

/s/ Hillard M. Sterling

Daniel J. Voelker, Esq.
Hillard M. Sterling, Esq.
Paul A. Duffy, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Drive, Suite 3000
Chicago, Illinois   60606
(312) 360-6458

1527786v1

# EXHIBIT A



**INDIRECT
DEALER AGREEMENT**

This Dealer Agreement ("Agreement") is entered into between U.S. Bank, National Association ("U.S. Bank"), its affiliates, successors and assigns, and the undersigned dealer ("Dealer") and describes the rights and obligations between Dealer and U.S. Bank with respect to the purchase of motor vehicle retail installment sale contracts and lease contracts from Dealer by U.S. Bank.

**1.  DEFINITIONS.**
For purposes of this Agreement, the following terms shall have the meanings listed below:
- "Agreement" means this Dealer Agreement, as amended from time to time pursuant to Section 10(g).
- "Buyer" means the party or parties who purchase a Vehicle from dealer pursuant to a Retail Contract with Dealer, including any Co-Buyers.
- "Contract" means a Lease Contract or a Retail Contract.
- "Customer" means either a Buyer or Lessee.
- "Lease Contract" means any lease contract entered between a Lessee(s) and Dealer with respect to a Vehicle.
- "Lessee" means any party or parties who lease a Vehicle pursuant to a Lease Contract, including any Co-Lessees.
- "Retail Contract" means any retail installment sale contract entered between a Buyer(s) and Dealer with respect to a Vehicle.
- "U.S. Bank Reference Materials" means the Lease Reference Guide, Rate Sheets and other Dealer reference materials published from time to time by U.S. Bank.
- "Supplemental Contract" means any extended service contract, credit insurance policy, prepaid maintenance agreement, gap loss protection agreement or other contract entered into by a Customer with respect to a Contract.
- "Vehicle" means the new or used motor vehicle which is the subject of a Contract.

**2.  SALE AND PURCHASE OF CONTRACTS.**
   **a.  Documentation and Sale.** Before U.S. Bank's purchase of any Contract, Dealer shall furnish U.S. Bank with the transaction's proposed term, any Customer credit information, and such other information as U.S. Bank shall request.  U.S. Bank's approval of a transaction shall be indicated by a Contract approval facsimile sent by U.S. Bank to Dealer.  After the issuance of a Contract approval facsimile, Dealer shall procure documents specified by the effective U.S. Bank Reference Materials or by U.S. Bank's direction.  Dealer shall forward the executed documents to U.S. Bank and such execution shall constitute a sale and assignment of all Dealer's right, title and interest in the Contract, in the Vehicle, and in any guaranty or other document in connection with the Contract.  Delivery of the executed documents to U.S. Bank shall constitute such a sale and assignment to U.S. Bank even if Dealer fails to complete the assignment provision in the Contract.  Dealer shall, upon U.S. Bank's request, execute any documents reasonably required to complete such sale and assignment.  In the event of a conflict between the terms of any specific assignment and this Agreement, this Agreement shall control.

   **b.  Purchase Price and Payment.** If documentation satisfactory to U.S. Bank is received within thirty (30) days of U.S. Bank's issuance of a Contract approval facsimile for the transaction, U.S. Bank will pay Dealer: (1) a sum agreed upon between U.S. Bank and Dealer, which purchase price shall not exceed the maximum amounts described in the current U.S. Bank Reference Materials; and (2) at U.S. Bank's option, the excess, if any, of the lease rate or finance charge provided in the Contract over a rate published from time to time by U.S. Bank.  U.S. Bank reserves the right to make any check or draft jointly payable to Dealer and to any third party who either holds a security interest in the inventory assets of Dealer or who sold the Vehicle to Dealer.

   **c.  Dealer Reserve.** Dealer may participate in U.S. Bank's Dealer Reserve Program subject to the terms and conditions set forth in the Dealer Reserve Addendum entered into between U.S. Bank and Dealer.

**3.  SUPPLEMENTAL CONTRACTS.**
Dealer may finance the sale of a Supplemental Contract to the Customer with respect to the Vehicle subject to the acceptability to U.S. Bank as specified in the U.S. Bank Reference Materials.  If the cash price of a Supplemental Contract is amortized in connection with the Contract and such Supplemental Contract is canceled during the term of Contract, then the Customer shall be entitled to a refund of the unearned portion of the cash price as provided in the Supplemental Contract or as otherwise required by law, whichever provides for the greatest refund.  As between U.S. Bank and Dealer, Dealer's liability under this Section 3 shall be limited to that amount Dealer collected and retained or otherwise received in connection with the sale of the Supplemental Contract.  Dealer shall remit its portion of the refund to the Customer, U.S. Bank or appropriate third party within fifteen (15) days of cancellation as directed by U.S. Bank.  Such refund may, if so provided in the Contract, be subject to U.S. Bank's security interest as assigned by Dealer.

**4.  INSURANCE.**
Dealer will provide U.S. Bank with written evidence of physical damage and liability insurance covering the Vehicle at least in the amount required by the Contract at the time the Contract is purchased.  This insurance policy shall name U.S. Bank as loss payee with respect to Retail Contracts and as loss payee and additional insured with respect to Lease Contracts.  If such written evidence is not provided by Dealer to U.S. Bank, Dealer will be responsible for any loss that would have been covered by said insurance.

5. **POWER OF ATTORNEY.**
Dealer authorizes U.S. Bank to sign and endorse Dealer's name upon any checks, drafts, money orders or other forms of payment that may come into U.S. Bank's possession as payments of or on account of any Contract. Dealer authorizes U.S. Bank to sign its name to any assignment of any Contract to U.S. Bank and to sign and endorse Dealer's name on any other instrument necessary to carry out the intent of this Agreement. This power of attorney shall be irrevocable and remain in effect for so long as there are Contracts outstanding which have been purchased pursuant to this Agreement.

6. **DEALER'S GENERAL WARRANTIES AND COVENANTS.**
So long as this Agreement is in effect, Dealer warrants, covenants that:
   a. If it is a corporation, it is in good standing in the state of its incorporation and it has obtained the necessary resolution of its Board of Directors and, if required, the necessary shareholders' ratification of the making of this Agreement and executing into the Contracts, and upon execution by Dealer of this Agreement and the Contracts each of such agreements shall constitute the valid and binding agreements of Dealer;
   b. It is prior to entering into a Contract licensed and authorized to enter into such Contract in the state or states where the provisions of the Contract are negotiated, the Contract is executed and the Vehicle is delivered;
   c. If it conducts business under a fictitious trade name or trade style, it has and shall comply with all applicable laws relating to the doing of business under a fictitious trade name or trade style; and
   d. It shall not represent that it is the agent of U.S. Bank.

7. **DEALER'S SPECIFIC WARRANTIES AS TO EACH CONTRACT.**
As to each Contract sold to U.S. Bank, Dealer warrants that as of the date of the sale:
   a. Dealer has caused title to the Contract and the Vehicle, free in either instance of any lien or encumbrance or claim or defense by the Customer, to be conveyed to U.S. Bank or its designee;
   b. The Contract has been duly authorized and executed by the Customer, constitutes the Customer's valid and binding agreement and has been duly executed by Dealer and the Customer at Dealer's premises;
   c. Each other instrument executed in connection with the Contract giving rights to Dealer has been duly authorized and executed by each party thereto and constitutes each such party's valid and binding agreement;
   d. The statements in the Contract and in any other instrument executed in connection therewith are true and correct;
   e. A completely filled-in copy of the Contract and any other instrument executed in connection therewith was delivered to the Customer at the time of execution;
   f. The names and signatures on the Contract and any other instrument executed in connection therewith are not forged, fictitious or assumed and are true and correct;
   g. ALL AGREEMENTS OF DEALER WITH RESPECT TO THE VEHICLE, OTHER THAN AGREEMENTS RELATIVE TO ITS ACQUISITION BY DEALER, ARE CONTAINED EITHER IN A CONTRACT OR IN THIS AGREEMENT, AND NEITHER DEALER NOR ANY OF ITS EMPLOYEES OR AGENTS HAS MADE ANY ORAL OR WRITTEN PROMISE, AFFIRMATION, WARRANTY OR REPRESENTATION TO THE CUSTOMER THAT IS NOT CONTAINED IN THE CONTRACT;
   h. Dealer has properly completed the Contract and all other documents required for purchase by U.S. Bank and will deliver all documents with respect to any Contract in accordance with the U.S. Bank Reference Materials;
   i. Dealer completed the retail installment sale or lease transaction in accordance with all applicable federal and state laws and regulations including making all disclosures required in the Contract, in any other document executed in connection with the Contract, in any advertisement of the transaction and in any related purchase order;
   j. Dealer has accurately disclosed any cash down payment or trade-in allowance;
   k. The conduct of Dealer in effecting the Contract shall not subject U.S. Bank to suit or administrative proceeding under any state or federal law, rule or regulation;
   l. The Customer has and shall have no defense, offset or counterclaim as to the enforcement of the Contract arising out of the conduct of Dealer, its agents or employees;
   m. The Contract is not and shall not be as of the time U.S. Bank becomes obligated to pay the purchase price for the Contract and Vehicle, if applicable, in default;
   n. Dealer does not know of any fact not disclosed to U.S. Bank which indicates the uncollectability of the Contract;
   o. Dealer acknowledges that U.S. Bank assumes no risk or liability with respect to a Vehicle or Contract for any event which occurs prior to U.S. Bank's purchase of such Vehicle and Contract;
   p. The Vehicle delivered to the Customer, together with all accessories and options agreed by Dealer to be delivered with the Vehicle, is in good condition, has been accepted by the Customer and is the same vehicle as described in the Contract;
   q. As directed by U.S. Bank, Dealer will file an application for title and registration for the Vehicle and submit it to the appropriate governmental agency showing U.S. Bank's interest in the Vehicle on or before twenty (20) days after the Customer receives possession of the Vehicle;
   r. Dealer will file and record all documents necessary to perfect a valid and enforceable first priority security interest of U.S. Bank with respect to Vehicles subject to Retail Contracts and will send U.S. Bank the filing receipts;
   s. The Vehicle is a U.S. specification vehicle and would not be considered a grey market or altered vehicle; and
   t. Dealer has not sold the Customer any Supplemental Contract or similar product in connection with any Contract, unless approved by U.S. Bank.

u. All Dealer's negotiations with any Customer in connection with the review, discussion and execution of the Contract were conducted exclusively in the English language; and

v. Dealer has furnished U.S. Bank all credit information received by Dealer and verified identity with respect to the Contract and such information is true and complete and accurate; Dealer further warrants that the applicant(s) identified in the credit application submitted to the Dealer will be the only user(s) of the Vehicle, will be parties who make payments under the Contract, and such applicant(s) are not using their names, credit and employment histories, or insurance record to purchase any Vehicle for a third party.

8. **DEALER LIABILITY.**

a. If a Dealer representation, warranty or covenant made in the assignment of a Contract to U.S. Bank is breached or is untrue or is alleged to be breached or untrue or should Dealer fail to perform any of its obligations to U.S. Bank under this Agreement, Dealer shall promptly pay upon receipt of U.S. Bank's demand, one or more of the following amounts at the election of U.S. Bank:

   (1) the unpaid balance of any Customer's liability in the event of early termination on any or all Contracts purchased hereunder, as determined by U.S. Bank less any applicable deposit, prepaid rental or similar sum or any Dealer Reserve not paid to Dealer in connection with said Contracts which U.S. Bank shall retain;

   (2) all losses and expenses incurred by U.S. Bank as a result of such breach or untruth or failure to perform; and

   (3) out-of-pocket expenses paid or incurred by U.S. Bank in connection with said Contracts with the collection of any amount due under any such Contract or Dealer's purchase of any Contract from U.S. Bank, including sales, use or other taxes, attorneys' fees and costs of litigation or administrative proceedings, whether by or against U.S. Bank, and expenses with respect to repossessing, storing, repairing and selling the Vehicle.

b. Until the purchase price described in <u>Section 8(a)</u> above has been received by U.S. Bank, Dealer shall have no right, title or interest in either the Contract or the Vehicle. U.S. Bank shall have a security interest in the Contract and the Vehicle under the Uniform Commercial Code as security for the performance by Dealer of its obligations hereunder, and U.S. Bank and Dealer shall have the respective rights, remedies and obligations of a creditor and debtor with respect thereto. Dealer shall cooperate with U.S. Bank in perfecting such security interest, Dealer shall remain liable for any deficiency following disposition.

9. **TERM.**

This Agreement shall become effective upon its execution by Dealer and subsequent acceptance by U.S. Bank and shall continue in force until terminated by either party. Either party may terminate this Agreement by sending to the other party notice of termination, certified mail return receipt requested, which shall be effective three (3) days after the mailing of such notice. Termination by either party shall not relieve the parties of their obligations set forth herein as to any Contract purchases by U.S. Bank from Dealer pursuant to this Agreement, except that insofar as there may be an agreement providing for Dealer Reserve, such agreement will likewise be terminated.

10. **GENERAL.**

a. **Setoff.** U.S. Bank may deduct from any obligation or fund due Dealer any amount Dealer owes U.S. Bank.

b. **Advertising.** Dealer agrees not to identify U.S. Bank in any advertising placed in any medium (including signs on Dealer's premises) without prior written approval from U.S. Bank.

c. **Contract Modification.** Dealer's liability hereunder shall not be affected by any settlement, extension, forbearance or variation in terms which U.S. Bank may grant in connection with any Contract or by the discharge or release of the obligations of Customer or any other persons thereunder by operation of law or otherwise.

d. **Contract Documentation.** Dealer acknowledges that the documents required and provided in connection with the documentation of a lease or retail installment sale transaction hereunder have been prepared for the purchase of Contracts to be purchased thereunder by U.S. Bank. Dealer may not use any such documentation except for purposes of effecting a lease or retail installment sale transaction pursuant to this Agreement.

e. **Waiver.** No failure or delay by U.S. Bank either to exercise any right or remedy it may have or to require the existence of any condition or to require the performance of any obligation of Dealer hereunder shall operate as a waiver hereof and such right, remedy, obligation or condition shall remain in full force and effect as if such failure or delay had not occurred.

f. **Notices.** Except as expressly permitted in this Agreement, all notices required or permitted to be given hereunder shall be in writing and shall be effective upon personal delivery or deposit in the U.S. mail, postage prepaid and properly addressed. Each party shall promptly provide the other with notice of any change in the first party's address.

g. **Amendments.** This Agreement shall be amended either by a separate writing which is dated and executed both by U.S. Bank and Dealer or by a separate writing which is forwarded to and received by Dealer from U.S. Bank in which case the amendments contained therein shall be deemed accepted without qualification by Dealer upon the issuance pursuant to Dealer's request of the first Contract approval facsimile by U.S. Bank following the receipt of such writing. Under no circumstances may this <u>Section 10(g)</u> be amended.

h. **Assignment.** This Agreement, or the benefits of any provision hereof, may be assigned by U.S. Bank. Dealer shall not assign this Agreement without the prior written consent of U.S. Bank. This Agreement shall be binding on and inure to the benefit of the respective heirs, administrators, executors, successors, legal representatives and assigns of both parties, it being understood, however, that Dealer may not assign its rights or duties hereunder without the prior written consent of U.S. Bank.

i. **Book Entries; Financial Records.** Dealer agrees to make appropriate entries on its books disclosing the sale of Contracts to U.S. Bank. Dealer agrees to maintain complete and accurate records concerning the sale of each Vehicle covered by a Contract purchased by U.S. Bank including, but not limited to, records of all other transactions affecting such Vehicles. Dealer agrees to allow U.S. Bank to inspect such books and all other financial records of Dealer at any time.

j. **Severability.** It is the intent of the parties that if any portion(s) of this Agreement is deemed by a court to be unenforceable, the remaining portions of the Agreement shall remain in full force and effect.

k. **Governing Law.** The interpretation and construction of this Agreement wherever made and executed and wherever to be performed shall be governed by the internal laws of the State of Ohio.

IN WITNESS WHEREOF, this Agreement is executed as of this _19_ day of _OCT_ , 20_07_ .

**ACCEPTED:**

**U.S. BANK, N.A.**

By _____

Title _____

Date _____

**DEALER**

Firm Name _CarLeasing Inc_

If corporation, two authorized officers sign below

By X _____  Title _Pres_

(Officer), Partner, Owner

By X _____  Title _V. P_

Officer, Partner, Owner

Firm Address _7100 Ridgeway_

_Lincolnwood IL 60712_

# EXHIBIT B

# GUARANTY

This GUARANTY is made and entered as of __OCY 26th, 2004 (the "Effective Date") from (the "Guarantor") to U.S. BANK, N.A. ("U.S. Bank").

## WITNESSETH:

In consideration of any loan or other financial accommodation heretofore or hereafter at any time made or granted to any Dealer (as defined below), the Guarantor agrees as follows:

1.    **DEFINITIONS**

   a. "**Dealer**" shall mean any one of the following entities listed below, including any subsidiaries or affiliates of such entities, whether now in existence or hereinafter established or acquired:

   CAR LEASEING _____, an S_ corporation.

   b. "**Indebtedness**" shall mean any obligation or indebtedness of any kind of any Dealer to U.S. Bank, howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, renewed or extended, or now or hereafter existing or due to become due, including without limitation, those obligations arising from the Dealer Agreement between the Dealer and U.S. Bank.

2.    **GUARANTY**

   a. **Guaranty Obligations.** The Guarantor hereby unconditionally and absolutely guarantees (i) the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of all Indebtedness and (ii) the full and prompt performance of all the terms, covenants, conditions and agreements related to the Indebtedness. The Guarantor further agrees to pay all expenses, including without limitation, attorneys' fees and court costs, paid or incurred by U.S. Bank in endeavoring to collect the Indebtedness, or any part thereof, and in enforcing the Guaranty, plus interest on such amounts at the lesser of 12% per annum or the maximum rate permitted by law. Interest on such amounts paid or incurred by U.S. Bank shall be computed from the date of payment made by U.S. Bank and shall be payable on demand.

   b. **Absolute and Unconditional Nature of the Guaranty.** The Guarantor acknowledges that this Guaranty is a guaranty of payment and not of collection, and that its obligations hereunder shall be absolute, unconditional and unaffected by:

      (i) the waiver of the performance or observance by any Dealer of any agreement, covenant, term or condition to be performed or observed by such Dealer;

      (ii) the extension of time for the payment of any sums owing or payable with respect to the Indebtedness or the time for performance of any other obligation arising out of the Indebtedness;

      (iii) the modification, alteration or amendment of any obligation arising out of the Indebtedness;

      (iv) the failure, delay or omission by U.S. Bank to enforce, assert or exercise any right, power or remedy in connection with the Indebtedness;

      (v) the genuineness, validity, or enforceability of the Indebtedness or any document related thereto;

      (vi) the existence, value or condition of, or failure of U.S. Bank to perfect its lien against, any security pledged in connection with the Indebtedness;

      (vii) the release of any security pledged in connection with the Indebtedness or the release, modification, waiver or failure to enforce any other guaranty, pledge or security agreement;

      (viii) the voluntary or involuntary liquidation, dissolution, sale of all or substantially all of the property, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition or readjustment or other similar application or proceeding affecting any Dealer or any assets of any Dealer; or

      (ix) the release or discharge of any Dealer from the performance or observance of any agreements, covenants, terms or conditions in connection with the Indebtedness by operation of law or otherwise.

   c. **Continuing and Unlimited Nature of the Guaranty.** The obligations of the Guarantor under this Guaranty shall be continuing and shall cover all Indebtedness existing as of the Effective Date of this Guaranty and Indebtedness existing at the time of termination of this Guaranty. This Guaranty shall be unlimited in amount and shall continue in effect until the Guaranty is terminated pursuant to Section 3 hereof.

   d. **Waivers by Guarantor.** The Guarantor hereby expressly waives: (i) notice of the acceptance by U.S. Bank of this Guaranty; (ii) notice of the existence or creation or non-payment of all or any of the Indebtedness; (iii) presentment, demand, notice of dishonor, protest, and all other notices whatsoever; and (iv) diligence in collection or protection of or realization upon the Indebtedness, or any part thereof, any obligation under this Guaranty or any security for or guaranty of any of the foregoing.

   e. **Authorization.** If the Guarantor is a corporation, this Guaranty has been expressly authorized by Guarantor's Board of Directors pursuant to a Board of Director's resolution in form and substance satisfactory to U.S. Bank.

   f. **Enforcement.** In no event shall U.S. Bank have any obligation to proceed against any Dealer, any other entity or any security pledged in connection with the Indebtedness before seeking satisfaction from the Guarantor. U.S. Bank may, at its option, proceed, prior or subsequent to, or simultaneously with, the enforcement of its rights hereunder, to exercise any right or remedy it may have against any Dealer, any other entity or any security pledged in connection with the Indebtedness.

   g. **Reinstatement.** The Guarantor agrees that if at any time all or any part of any payment theretofore applied by U.S. Bank to any of the Indebtedness is or must be rescinded or returned by U.S. Bank for any reason whatsoever (including, without limitation, the insolvency, bankruptcy or reorganization of any Dealer), such Indebtedness shall, for purposes of this Guaranty, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence, notwithstanding such application by U.S. Bank and



d.    If Guarantor petitions or applies to any tribunal for the appointment of a trustee or receiver of the business, estate or assets or of any substantial portion of the business, estate or assets of Guarantor, or commences any proceedings relating to Guarantor under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect;

e.    If any such petition or application is filed or any such proceedings are commenced against Guarantor and Guarantor by any act indicates its approval thereof, consent thereto or acquiescence therein, or any order is entered appointing any such trustee or receiver, or declaring Guarantor bankrupt or insolvent, or approving the petition in any such proceedings; or

f.    Any suit or proceeding shall be filed against any Dealer or Guarantor, which, if adversely determined could, substantially impair the ability of the Guarantor or such Dealer to perform any of their obligations with respect to this Guaranty or the Indebtedness, as determined by U.S. Bank in its sole and absolute discretion.

If an Event of Default under this Guaranty shall have occurred, in addition to pursuing any remedies which may be available to U.S. Bank with respect to the Indebtedness, U.S. Bank, at its option, may take whatever action at law or in equity U.S. Bank may deem necessary, regardless of whether U.S. Bank shall have exercised any of its rights or remedies with respect to any of the Indebtedness, and U.S. Bank may demand, at its option, that the Guarantor pay forthwith the full amount which would be due and payable hereunder as if all Indebtedness were then due and payable.

5.    **GENERAL**

a.    **Entire Agreement.** This Guaranty contains the entire and only agreement between the Guarantor and U.S. Bank with respect to the guaranty of Indebtedness and any representation, promise, condition or understanding in connection therewith which is not expressed in this Guaranty shall not be binding upon the Guarantor or U.S. Bank. All prior understandings and agreements related to guaranty of the Indebtedness shall be superseded by this Guaranty as of the Effective Date.

b.    **Application of Payments; Subrogation.** Any amounts received by U.S. Bank from any source on account of the Indebtedness may be applied by it toward the payment of such of the Indebtedness, and in such order of application, as U.S. Bank may from time to time elect. Notwithstanding any payments made by or for the account of the Guarantor, the Guarantor shall not be subrogated to any rights of U.S. Bank until such time as this Guaranty has been terminated in accordance with Section 3 above.

c.    **Notices.** All notices to the Guarantor shall be forwarded by express mail for overnight delivery to the address set forth below the Guarantor's signature, or such other address as the Guarantor may from time to time specify in writing to U.S. Bank. All notices to U.S. Bank shall be forwarded by express mail for overnight delivery to the following address: _____ Attention: _____, or such other address as U.S. Bank may specify to the Guarantor in writing.

d.    **Governing Law; Severability.** This Guaranty shall be governed by the laws of the State of Wisconsin. Wherever possible, each provision of this Guaranty shall be interpreted in such manner to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, the remaining provisions of this Guaranty shall remain in full force and effect.

e.    **Successors and Assigns.** All guaranties and agreements contained in this Guaranty shall bind the legal representatives, heirs, successors and assigns of the Guarantor.

f.    **References to Guarantor.** Each reference to Guarantor herein shall be deemed to include the legal representatives, heirs, officers, employees and agents of the Guarantor and their respective successors and assigns.

g.    **Rights and Remedies of U.S. Bank.** No delays on the part of U.S. Bank in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any power or right hereunder or the failure to exercise same in any instance preclude other or further exercise of any other power or right, nor shall U.S. Bank be liable for exercising or failing to exercise any such power or right. The rights and remedies hereunder are cumulative and not exclusive of any rights or remedies which U.S. Bank may or will otherwise have.

h.    **Financial Statements.** Upon U.S. Bank's request, Guarantor will provide U.S. Bank with Guarantor's audited financial statements as certified by Guarantor's independent certified public accountant or such other financial statements and information as Lender may request from time to time.

i.    **Amendments.** This Guaranty may not be modified or amended except by a writing duly executed by the Guarantor. Any such modification or amendment must be expressly consented to in writing by U.S. Bank.

WHEREAS, this Guaranty has been executed and delivered by the Guarantor to U.S. Bank as of the Effective Date.

GUARANTOR:    _Sonny Fox_____, in his individual capacity.

_7100 W. Riverway Rd. Lincolnwood IL_        Sonny Fox

Address:

_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_    ) SS.    State of _IL_ )
                          County of _Cook_ )

On the 26th day of OCT , in the year 2004, before me personally came _Sonny Fox_____ to me known, who being first duly sworn, did depose and say he resides in _Highland Park IL_, that such person is the same person described in and which executed the above Guaranty; that such person acknowledged that he signed, sealed and delivered the above Guaranty as his free and voluntary act, for the uses and purposes therein set forth.

COPY

# EXHIBIT "B"

Case 1:08-cv-01822    Document 17-4    Filed 05/23/2008    Page 2 of 13
Case 1:08-cv-01822    Document 17-3    Filed 05/23/2008    Page 2 of 13
Case 1:08-cv-01822    Document 15    Filed 05/01/2008    Page 1 of 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| U.S. BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  08 C 1822 |
| v. | ) | |
| | ) | |
| C.A.R. LEASING, INCORPORATED, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

<u>NOTICE OF FILING</u>

**PLEASE TAKE NOTICE** that on the 1st day of **May, 2008**, we filed with the Clerk of

the United States District Court, Northern District of Illinois, **Proof of Service of Summons and**

**Amended  Complaint on Defendant, Marc N. Zaransky**, a copy of which is attached hereto.

Respectfully submitted,

**U.S. Bank, N.A.,**
Plaintiff

BY:    /s/Daniel J. Voelker_____
One of Its Attorneys

Daniel J. Voelker, Esq.
William N. Howard, Esq.
Garry L. Wills, Esq.
FREEBORN & PETERS LLP
311 S. Wacker Drive, Suite 3000
Chicago, Illinois   60606
(312) 360-6458

# Affidavit of Process Server

U.S. Bank, N.A.                  vs  C.A.R. Leasing Incorporated  08CV1822

PLAINTIFF/PETITIONER          DEFENDANT/RESPONDENT          CASE #

Being duly sworn, on my oath, I  Walter Schwalm
declare that I am a citizen of the United States, over the age of eighteen and not a party to this action.

**Service:**  I served  Marc N. Zaransky

NAME OF PERSON/ENTITY BEING SERVED

with the (documents)  ☐ Subpoena with $_____    witness fee and mileage

☒ amended complaint & Summons

by serving (NAME)  ✗ Heidi Zaransky

at ☒ Home  956 Surrey Ln, Northbrook, Il

☐ Business _____

☒ on (DATE)  4/22/08    at (TIME)  6:00 P.M

Thereafter copies of the documents were mailed by prepaid, first class mail on (DATE) _____

from (CITY) _____    (STATE) _____

**Manner of Service:**

☐ By Personal Service.

☐ By leaving, during office hours, copies at the office of the person/entity being served, leaving same with the person apparently in charge thereof,

namely _____

☒ By leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the general nature of the papers,

namely  Heidi Zaransky - Marc Zaransky's wife

☐ By posting copies in a conspicuous manner to the address of the person/entity being served.

**Non-Service:**  After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address     ☐ Evading          ☐ Other: _____
☐ Address Does Not Exist  ☐ Service Cancelled by Litigant
☐ Moved, Left no Forwarding ☐ Unable to Serve in a Timely Fashion

**Service Attempts:**  Service was attempted on:  (    ) _____ , (    ) _____
                                                    DATE  TIME          DATE  TIME

(    ) _____ , (    ) _____ , (    ) _____
  DATE  TIME          DATE  TIME          DATE  TIME

**Description:**  ☐ Male      ☒ White Skin   ☐ Black Hair   ☐ White Hair   ☐ 14-20 Yrs.   ☐ Under 5'    ☐ Under 100 Lbs.
                ☒ Female    ☐ Black Skin   ☐ Brown Hair   ☐ Balding      ☐ 21-35 Yrs.   ☐ 5'0"-5'3"   ☒ 100-130 Lbs.
                            ☐ Yellow Skin  ☒ Blond Hair                  ☒ 36-50 Yrs.   ☒ 5'4"-5'8"   ☐ 131-160 Lbs.
                            ☐ Brown Skin   ☐ Gray Hair    ☐ Mustache     ☐ 51-65 Yrs.   ☐ 5'9"-6'0"   ☐ 161-200 Lbs.
                ☐ Glasses   ☐ Red Skin     ☐ Red Hair     ☐ Beard        ☐ Over 65 Yrs. ☐ Over 6'     ☐ Over 200 Lbs.

OTHER IDENTIFYING FEATURES:  F w/ shoulder length blond hair
no glasses

State of Illinois    County of Cook                    Walter Schwa[?]

SERVED BY
LASALLE PROCESS SERVERS

Subscribed and sworn to before me,
a notary public, this  23  day of  Apr. 7 , 20 08

OFFICIAL SEAL
ANDREW RAPHAEL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-17-2011

NOTARY PUBLIC

NAPPS

CHARTER MEMBER NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS.

Case 1:08-cv-01822   Document 17-4   Filed 05/23/2008   Page 4 of 13
Case 1:08-cv-01822   Document 17-3   Filed 05/23/2008   Page 4 of 13
Case 1:08-cv-01822   Document 15   Filed 05/01/2008   Page 3 of 3

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney states that he caused a true and correct copy of the **Notice and Proof of Service of Summons and Amended Complaint on Defendant, Marc N. Zaransky,** to be served upon the parties of record, as shown below, by depositing a copy of same in the U.S. Mail on the 1st day of **May, 2008.**

C.A.R. Leasing, Incorporated
c/o Sonny Fox, Reg. Agent
7100 N. Ridgeway
Lincolnwood, IL 60645

Sonny Fox, Reg. Agent
7100 N. Ridgeway
Lincolnwood, IL 60645

Marc N. Zaransky
956 Surrey Ln.
Northbrook, IL  60062

<u>/s/ Daniel J. Voelker</u>

Daniel J. Voelker, Esq.
Hillard M. Sterling, Esq.
Paul A. Duffy, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Drive, Suite 3000
Chicago, Illinois   60606
(312) 360-6458

# EXHIBIT "C"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| U.S. BANK, N.A., | ) | |
| Plaintiff, | ) ) ) | Case No.  08 C 1822 |
| v. | ) ) | |
| C.A.R. LEASING, INCORPORATED, et al. | ) ) | |
| Defendants. | ) ) ) | |

### NOTICE OF FILING

**PLEASE TAKE NOTICE** that on the **1st** day of **May, 2008**, we filed with the Clerk of

the United States District Court, Northern District of Illinois, **Proof of Service of Amended**

**Complaint on Defendants, C.A.R. Leasing Incorporated and Sonny Fox**, copies of which are

attached hereto.

Respectfully submitted,

**U.S. Bank, N.A.,**
Plaintiff


BY:    /s/Daniel J. Voelker
        One of Its Attorneys

Daniel J. Voelker, Esq.
William N. Howard, Esq.
Garry L. Wills, Esq.
FREEBORN & PETERS LLP
311 S. Wacker Drive, Suite 3000
Chicago, Illinois   60606
(312) 360-6458

# Affidavit of Process Server

U.S. BANK NA
**PLAINTIFF/PETITIONER** vs C.A.R. leasing incorporated 08CV1822
Walter Schwalm **DEFENDANT/RESPONDENT** **CASE #**

Being duly sworn, on my oath, I _____
declare that I am a citizen of the United States, over the age of eighteen and not a party to this action.

**Service:** I served C.A.R. Leasing incorporated
**NAME OF PERSON/ENTITY BEING SERVED**

with the (documents) ☐ Subpoena with $ _____ witness fee and mileage

☒ Amended complaint _____

by serving (NAME) ☒ _____

at ☐ Home _____
☒ Business C.A.R Leasing Inc. 7100 N. Ridgeway Lincolnwood Il
☒ on (DATE) 4/29/08 at (TIME) 12:25 P.M

Thereafter copies of the documents were mailed by prepaid, first class mail on (DATE) _____

from (CITY) _____ (STATE) _____

**Manner of Service:**
☒ By Personal Service. Sonny Fox
☐ By leaving, during office hours, copies at the office of the person/entity being served, leaving same with the person apparently in charge thereof,
namely _____
☐ By leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the general nature of the papers,
namely _____
☐ By posting copies in a conspicuous manner to the address of the person/entity being served.

**Non-Service:** After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):
☐ Unknown at Address      ☐ Evading                        ☐ Other: _____
☐ Address Does Not Exist  ☐ Service Cancelled by Litigant
☐ Moved, Left no Forwarding ☐ Unable to Serve in a Timely Fashion

**Service Attempts:** Service was attempted on: (1) 4/21/08 12:10 PM
(    ) _____ **DATE   TIME** , (    ) _____ **DATE   TIME** , (    ) _____ **DATE   TIME**
(    ) _____ **DATE   TIME** , (    ) _____ **DATE   TIME** , (    ) _____ **DATE   TIME**

**Description:**
☒ Male        ☒ White Skin    ☐ Black Hair    ☐ White Hair   ☐ 14-20 Yrs.   ☐ Under 5'      ☐ Under 100 Lbs.
☐ Female      ☐ Black Skin    ☐ Brown Hair    ☐ Balding      ☐ 21-35 Yrs.   ☐ 5'0"-5'3"     ☐ 100-130 Lbs.
              ☐ Yellow Skin   ☐ Blond Hair                   ☐ 36-50 Yrs.   ☒ 5'4"-5'8"     ☒ 131-160 Lbs.
              ☐ Brown Skin    ☒ Gray Hair     ☐ Mustache     ☒ 51-65 Yrs.   ☐ 5'9"-6'0"     ☐ 161-200 Lbs.
☐ Glasses     ☐ Red Skin      ☐ Red Hair      ☐ Beard        ☐ Over 65 Yrs. ☐ Over 6'       ☐ Over 200 Lbs.

OTHER IDENTIFYING FEATURES: thin gray hair, wearing glasses

State of Illinois    County of Cook

Subscribed and sworn to before me,
a notary public, this 30 day of April, 20 08

Walter Schw___
**SERVED BY**
**LASALLE PROCESS SERVERS**

NOTARY PUBLIC

**OFFICIAL SEAL**
**ANDREW RAPHAEL**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-17-2011

**NAPPS**

CHARTER MEMBER NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS.

# Affidavit of Process Server

US Bank, N.A. _____ vs C.A.R. Leasing Incorporated 08CV1822
PLAINTIFF/PETITIONER                DEFENDANT/RESPONDENT                CASE #

Walter Schwalm

Being duly sworn, on my oath, I
declare that I am a citizen of the United States, over the age of eighteen and not a party to this action.

**Service:**   I served  Sonny Fox

with the (documents) ☐ Subpoena with $_____ witness fee and mileage
                                          NAME OF PERSON/ENTITY BEING SERVED

☒ Amended Complaint

by serving (NAME) _____

at ☐ Home _____

☒ Business C.A.R. Leasing Inc. 7100 N. Ridgeway Lincolnwood IL

☒ on (DATE) (2) 4/29/08 _____ at (TIME) 12:25 PM

Thereafter copies of the documents were mailed by prepaid, first class mail on (DATE) _____

from (CITY) _____ (STATE) _____

## Manner of Service:

☒ By Personal Service. Sonny Fox

☐ By leaving, during office hours, copies at the office of the person/entity being served, leaving same with the person apparently in charge thereof,

namely _____

☐ By leaving a copy at the defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards, and informing that person of the general nature of the papers,

namely _____

☐ By posting copies in a conspicuous manner to the address of the person/entity being served.

## Non-Service:

After due search, careful inquiry and diligent attempts at the address(es) listed above, I have been unable to effect process upon the person/entity being served because of the following reason(s):

☐ Unknown at Address         ☐ Evading                    ☐ Other: _____
☐ Address Does Not Exist     ☐ Service Cancelled by Litigant
☐ Moved, Left no Forwarding  ☐ Unable to Serve in a Timely Fashion

**Service Attempts:**  Service was attempted on: (①) 4/21/08  12:10 PM
                                                          DATE       TIME                          DATE       TIME

(   ) _____ , (   ) _____ , (   ) _____
          DATE    TIME              DATE    TIME              DATE    TIME

## Description:

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ Male | ☒ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☐ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blond Hair | | ☐ 36-50 Yrs. | ☒ 5'4"-5'8" | ☒ 131-160 Lbs. |
| | ☐ Brown Skin | ☒ Gray Hair | ☐ Mustache | ☒ 51-65 Yrs. | ☐ 5'9"-6'0" | ☐ 161-200 Lbs. |
| ☐ Glasses | ☐ Red Skin | ☐ Red Hair | ☐ Beard | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

OTHER IDENTIFYING FEATURES: thin gray hair, wearing glasses

State of Illinois     County of Cook

_____
SERVED BY
LASALLE PROCESS SERVERS

Subscribed and sworn to before me,
a notary public, this 30 day of Apr 20 08

OFFICIAL SEAL
ANDREW RAPHAEL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-17-2011

NOTARY PUBLIC _____

NAPPS

CHARTER MEMBER NATIONAL ASSOCIATION OF PROFESSIONAL PROCESS SERVERS.

## CERTIFICATE OF SERVICE

The undersigned attorney states that he caused a true and correct copy of the **Notice and Proof of Service of Amended Complaint on Defendants, C.A.R. Leasing, Incorporated and Sonny Fox**, to be served upon the parties of record, as shown below, by depositing a copy of same in the U.S. Mail on the **1st** day of **May, 2008.**

C.A.R. Leasing, Incorporated
c/o Sonny Fox, Reg. Agent
7100 N. Ridgeway
Lincolnwood, IL 60645

Sonny Fox, Reg. Agent
7100 N. Ridgeway
Lincolnwood, IL 60645

Marc N. Zaransky
956 Surrey Ln.
Northbrook, IL  60062

/s/ Daniel J. Voelker

Daniel J. Voelker, Esq.
Hillard M. Sterling, Esq.
Paul A. Duffy, Esq.
**FREEBORN & PETERS LLP**
311 S. Wacker Drive, Suite 3000
Chicago, Illinois   60606
(312) 360-6458

# EXHIBIT "D"

At felon's car-leasing spot, pols have zeal for the deals -- chicagotribune.com    Page 11 of 13 Page 1 of 3

www.chicagotribune.com/news/local/chi-kass_bd04may04,0,6259241.column

# chicagotribune.com

## At felon's car-leasing spot, pols have zeal for the deals

John Kass

May 4, 2008

*W*hen it comes to leasing a fine luxury car, where do indicted political fixer Tony Rezko, King of Cicero "Fast Eddie" Vrdolyak, politicians, Rush Street bar owners, nursing home czars and even state Sen. Jimmy DeLeo (D-How You Dooin'?) go for their deals?

To Marc Zaransky, leaser to the Illinois political stars, and a boss at C.A.R. Leasing in Lincolnwood.

Even though he's a two-time convicted felon whose first conviction involved bribing a mobbed-up Cook County sheriff's boss in exchange for county contracts, politicians still flock to Zaransky for their car leases.



Now he's involved in multiple lawsuits from banks and car dealers—one suit filed in federal court and four in Cook County recently—demanding money for autos that disappeared or weren't delivered.

No one has been criminally charged with anything yet, though if my instincts are correct, you might be hearing about it with increasing federal frequency. As the political class squirms, I ask rhetorically, 'Why would they go to a guy who has already been involved in crimes in which nice cars were used for political bribes?' Why?

"I lease two cars from Zaransky," said state Rep. Lou Lang (D-Skokie), one of the loudest reform voices in the ethics debate in Illinois, who leases a 2008 Lexus and a 2007 Chrysler from Zaransky.

"My dealings are always arm's length. He's in my district," Lang said Friday. "I knew he had some kind of an issue. I didn't think it was my business to ask."

Another curious car fact erupted in Springfield last week, when an employee of the secretary of state's office was charged with fixing computerized car title information so lenders could not find and repossess loan-delinquent automobiles. I called Zaransky—former son-in-law of Chicago Ald. Bernard Stone (50th)—to ask about all this.

"Oh, I don't have any comment on that," Zaransky told me on Friday.

Too bad.

His second felony conviction involved a $5 million check-kiting scam he began while awaiting

sentencing for his first offense, bribing mob underling and former Cook County Undersheriff James "The Bohemian" Dvorak in the late 1980s with cars.

Zaransky and his brother Michael—a former Illinois Gaming Board member under former Gov. Jim "Cellini's Guy" Edgar, and the former chairman of the Chicago Convention and Visitor's Bureau under Mayor Richard Daley—both pleaded guilty in 1993.

The Zaranskys cooperated, saying they gave and cash to Dvorak and Dvorak's underling, Mark Richmond, now a Deerfield businessman. Then Richmond pleaded guilty, admitting he and Dvorak accepted cars from the Zaranskys and Rolex watches from others. Richmond also told the FBI that he and Dvorak went on gambling trips to Las Vegas, Atlantic City and the Bahamas, and that Dvorak would use Chicago Outfit cash from mob bosses Rocco Infelice and Salvatore DeLaurentis for gambling.

But that was in the late '80s. Now, years later, Mark Richmond has a new political friend:

Illinois Secretary of State Jesse White, whose job it is to handle car titles and regulation of vehicles.

White and Richmond have a tight social relationship, a source close to White told me Friday, confirming the two men have vacationed together recently at a casino resort in Aruba and gambled there.

What does all this prove?

Not much. Although I sure wish I had subpoena power or two squads of FBI agents to work this, or that I was a fly on the wall when Jesse White and Mark Richmond threw dice in Aruba, perhaps with guys from Chicago watching.

According to secretary of state records we checked, Tony Rezko leased a Lexus sport-utility vehicle; Vrdolyak got two Land Rovers; and the nursing home czars—whose businesses are regulated by state officials—received a Porsche and several Mercedes.

The king of Zaransky lease deals is state Sen. DeLeo, a car buff partial to Benzes and Jaguars, one of which ended up in the hands of DeLeo buddy Marty Gutilla, manager of the famed Tavern on Rush.

Records show DeLeo leased a Chevy Tahoe that Richmond now has; two fine Jaguars; two ridiculously expensive Mercedes, and other autos, including Jimmy's famed 2007 Bentley Continental.

DeLeo's Bentley is the subject of its own lawsuit by Steve Foley Cadillac of Northbrook, which has the car, but not the title; because U.S. Bank says it has not been paid more than $190,000 owed for that sleek driving machine.

36th Ward Democratic boss Sam "Pastries" Banks, a DeLeo political associate, signed a lease for a fine 2008 Mercedes, according to another lawsuit against C.A.R. Leasing. Banks did not return my calls Friday.

In 2000, as Zaransky plead guilty to the check-kiting scam—admitting in the process he owed $600,000 in Vegas gambling debts—Pastries begged mercy from U.S. District Judge Wayne Andersen.

"Marc, in my opinion, has a long and useful life ahead of him, as an asset to the community in which he lives and to those who he loves and supports," Pastries wrote.

Such sweet words, for a guy with such sweet cars.

jskass@tribune.com

Copyright © 2008, Chicago Tribune